FILED

2015 Nov-06  AM 10:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| ISHMAEL SMITTIE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  1:13-cv-00219-HGD |
| | ) | |
| ERIC H. HOLDER, JR., | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION AND ORDER

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant.  (Doc. 13).   The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.  (Doc. 24).

Plaintiff, Ishmael Smittie, was first employed by the U.S. Bureau of Prisons in 1986.  In 1996, he was promoted to a GS-11 Lieutenant position while working at the Federal Correctional Institution (FCI) in Texarkana, Texas.  In 2000, plaintiff transferred to FCI Talladega as a GS-11 Lieutenant, where he remained until his retirement.  In 2009, plaintiff was 50 years old.  With regard to promotions, he was not eligible for a Veteran's Preference.

In Count One of his complaint (Doc. 1), plaintiff alleges that he timely applied for a position as a GS-11 Lieutenant at FCI Bennettsville (Arkansas).  According to plaintiff, on September 2, 2009, the selecting official, Raymond Holt, selected Leroy Jones for this position.  Plaintiff alleges that he was qualified for the position and that his qualifications were clearly superior to the qualifications of the selectee.

Plaintiff alleges that, prior to this selection, he had engaged in conduct protected by Title VII of the Civil Rights Act, in which he opposed unlawful discrimination protected by the Act.  He further alleges that Raymond Holt was aware of his prior protected conduct.  He asserts that his non-selection was causally related to his prior protected conduct and constitutes unlawful retaliation.

In Count Two, plaintiff alleges that, prior to the selection process referred to in Count One, he engaged in conduct protected by the Age Discrimination in Employment Act (ADEA), in which he took action to oppose discrimination made unlawful by that Act.  He further alleges that at the time of his non-selection for the Bennettsville position, the selecting official, Mr. Holt, was aware of his prior protected conduct.  He asserts that his non-selection was causally related to his protected ADEA conduct and constitutes unlawful retaliation under the ADEA.  He further asserts that his non-selection was unlawfully motivated by age discrimination in violation of the ADEA.

In Count Three, plaintiff alleges that he timely applied for a position as a GS-11 Lieutenant at the Federal Correctional Center (FCC) in Yazoo City (Mississippi). According to plaintiff, the selecting official was again Raymond Holt.  On or about November 17, 2009, and December 27, 2009, Kyle Goins and Omar Docher were selected for the two open positions.  Plaintiff alleges that his qualifications were clearly superior to those who were selected for these positions.  He further alleges that, prior to his non-selection, the selecting official was aware of plaintiff's prior protected conduct under Title VII of the Civil Rights Act.  He asserts that his non-selection was causally related to his protected conduct and constitutes unlawful retaliation under Title VII of the Civil Rights Act.

In Count Four, plaintiff alleges that his non-selection by Holt for the Yazoo City GS-11 position also constituted unlawful retaliation for having engaged in protected conduct under the ADEA and that his non-selection was motivated by age discrimination in violation of the ADEA.

In Count Five, plaintiff alleges that he applied for another GS-11 position at FCC Yazoo City and that the selecting official, Raymond Holt, selected Sondra Miller and Willie Samuel for the two open positions on March 8, 2010.  Plaintiff again asserts that his qualifications were superior to those of the selectees.  He asserts that his non-selection was causally related to his prior Title VII-protected conduct and constitutes unlawful retaliation under Title VII.

In Count Six, plaintiff alleges that his non-selection for the Yazoo City GS-11 position referenced in Count Five was the result of discrimination and retaliation under the ADEA.

In Count Seven, plaintiff alleges that he applied for a GS-11 Lieutenant position at FCI Tallahassee (Florida). He again alleges that the selecting official was Raymond Holt. On or about May 10, 2010, Ronald Mason, Velvette Jones and Kenneth Johnson were selected for these three open positions. Plaintiff asserts that his non-selection for the position was the result of retaliation under Title VII of the Civil Rights Act.

In Count Eight, plaintiff alleges that his non-selection for the FCI Tallahassee GS-11 position referenced in Count Seven was the result of discrimination and retaliation under the ADEA.

In Count Nine, plaintiff alleges that he applied for a GS-11 Lieutenant position at FCI Marianna (Florida). He alleges that Raymond Holt was the selecting official. On June 1, 2010, Christopher Barfield was selected for this position. Plaintiff asserts that his non-selection for this position was the result of retaliation under Title VII of the Civil Rights Act.

In Count Ten, plaintiff alleges that his non-selection for the FCI Marianna GS-11 position referenced in Count Nine was the result of discrimination and retaliation under the ADEA.

In Count Eleven, plaintiff alleges that he applied for a GS-11 Lieutenant position at FCI Miami (Florida).  He alleges that Raymond Holt was the selecting official.  On June 22, 2010, Bobby Roy was selected for this position.  Plaintiff asserts that his non-selection for this position was the result of retaliation under Title VII of the Civil Rights Act.

In Count Twelve, plaintiff alleges that his non-selection for the FCI Miami GS-11 position referenced in Count Eleven was the result of discrimination and retaliation under the ADEA.

Subsequent to the completion of discovery in this matter, defendant filed a motion for summary judgment to which plaintiff has responded and defendant replied. The matter is now ready for disposition.

### SUMMARY JUDGMENT STANDARD

Defendant has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. (Doc. 35, Motion for Summary Judgment).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. Rule 56(a). Defendant, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for his motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which he believes demonstrates the absence of a

genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A genuine issue of material fact is shown when the non-moving party produces evidence so that a reasonable fact-finder could return a verdict in his favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In reviewing whether the non-moving party has met his burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter; the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992). However, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). A "mere scintilla of evidence" in support of the non-moving party also cannot overcome a motion for summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

## LEGAL STANDARDS

### I.   Age Discrimination-ADEA

Federal law makes it unlawful to discriminate against a person regarding the terms and conditions of employment based solely on age. *See* 29 U.S.C. § 623. In

proving an age discrimination claim, a plaintiff can establish a *prima facie* case of discrimination through either direct evidence of discrimination or a variation of the four-part test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for circumstantial evidence.  *See Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).  A review by the court of all the evidence in this case leads it to conclude that there is no direct evidence of discrimination and that, therefore, plaintiff must make out a *prima facie* case of discrimination based on circumstantial evidence.

This Circuit has adopted a variation of the test set out for Title VII claims in *McDonnell Douglas* for cases under the ADEA.  *Carter*, 870 F.2d at 582.  Under this variation of the *McDonnell Douglas* test for establishing a *prima facie* case of age discrimination, the plaintiff must show that (1) he was a member of the protected age group, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) he was replaced by a younger individual.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*). *See also Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir. 1992).  Alternatively, the fourth element may be proved by demonstrating that the plaintiff's employer treated similarly-situated employees outside the protected class more favorably.  *Knight v. Baptist Hosp. of Miami*, 330 F.3d 1313, 1316 (11th Cir. 2003).

If the plaintiff satisfies this burden, the employer then must offer a legitimate, non-discriminatory reason for the employment action. *See Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 851 (11th Cir. 1997). If the employer does so, the plaintiff bears the ultimate burden of demonstrating that the employer's proffered reasons are a pretext for discrimination. *See id.*; *Watkins v. Sverdrup*, 153 F.3d 1308, 1314 (11th Cir. 1998); *Mitchell v. USBI Co.*, 186 F.3d 1352, 1354 (11th Cir. 1999).

## II.   <u>Retaliation</u>

In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove the following elements:  (1) he participated in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 578 (11th Cir. 2000).

The Eleventh Circuit has adapted to issues of age discrimination the principles of law applicable to cases arising under the very similar provisions of Title VII. *Carter*, 870 F.2d at 581. Similar to substantive claims of discrimination, the burden of proof in Title VII retaliation cases is governed by the framework established in *McDonnell Douglas. Id.* Thus, if the plaintiff establishes a *prima facie* case of retaliation, the employer then must offer a legitimate, non-discriminatory reason for the employment action. If the employer does so, the plaintiff bears the ultimate

burden of demonstrating that the employer's proffered reasons are a pretext for discrimination.

Retaliation is a separate violation of Title VII. "To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to [his] protest,' so long as [he] had a reasonable good faith belief that the discrimination existed." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (quoting *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989)).

## DISCUSSION

## I.   Selection Process

Plaintiff asserts that the final decision-maker with respect to each of the positions he sought was Raymond Holt, Regional Director for the Southeast Regional Office of the Federal Bureau of Prisons. While it is correct to say that Mr. Holt was the final decision-maker, the process is more involved.

When a vacancy in a GS-11 Lieutenant position occurred, an announcement was posted which eligible candidates could apply to fill. According to the record evidence, the Bureau of Prisons (BOP) Human Resources Department would make a list of the "best qualified," a veteran's list and an "exceptions to merit promotion procedures" list of candidates to be considered for each vacancy. In this manner, a list of eligible candidates is forwarded to the warden of the facility where the vacancy

exists for his or her review.  The warden of that institution then would make a recommendation of the top candidate or candidates for the position or positions to be filled.  This recommendation or these recommendations then were given to the Deputy Regional Director, William Perdue.

Deputy Director Perdue then would check to make sure that the recommended candidates were on the list of eligibles and take the recommendation or recommendations to Director Holt.  In fact, Perdue testified that he would take the full list of all eligible candidates to Director Holt.  (Perdue Depo. at 32).  According to Perdue, Holt would generally ask the same questions regarding the candidates' backgrounds and then decide whether to appoint the candidate recommended by the warden.  (*Id*. at 16-18).  According to Perdue, the candidates recommended by the wardens were almost always selected by Director Holt.  He described the rejection rate as "rare" and "one in a thousand."  (*Id*. at 27).  Deputy Director Perdue testified that he had no specific recollection of an instance when a warden's choice was rejected by Holt, but he is certain that it happened.  (*Id*. at 28).  According to testimony, there was never any discussion of a candidate's prior EEO activity between Director Holt and Deputy Director Perdue.  Holt testified that he never considered plaintiff's prior EEO activity or age as a factor when making his selections.  (DX 5, Holt Interrogatories, at Smittie _000216-000217).

Once a selection was made, the warden where the vacancy existed was advised who was selected.  Likewise, the institution where the selectee was employed was also notified, as was the selectee.  (Perdue Depo. at 18-19).  In each instance listed in the complaint, plaintiff was a qualified applicant.  However, he was not selected for any of the positions.

## II.     Counts One and Two – FCI Bennettsville

In 2009, plaintiff applied for a position as a GS-11 Lieutenant at the BOP's FCI Bennettsville facility.  Plaintiff was not selected for this position, and he alleges that his non-selection was due to age discrimination and retaliation for having previously filed EEO complaints regarding his non-selection for other positions.

The recommending warden of this facility was Darlene Drew.  According to Drew, all of the candidates on the "best qualified" list were considered, including plaintiff.  According to Drew, she recommended Adam Herron and Leroy Jones for the position.  She stated that, based on her review of Herron's application material, he outlined a broad knowledge and skill in the position as a lieutenant.  He also had experience as an Emergency Preparedness Officer and working in the Special Housing Unit.  He additionally reported working in a high security level institution.  (DX 7, Drew Interrogatories, at Smittie_000289).

Drew further stated that Jones reported experience as a member of the Special Operations Response Team and had a broad degree of knowledge and skill in the

position as a lieutenant and correctional officer.  He was also reported to have above average oral and written skills, above average expertise as a lieutenant, and a high commitment to quality work and responsiveness toward his duties.  (*Id.*).

Drew reported that she did not recommend Smittie because her recommendation was based upon a consideration of all the candidates on the Best Qualified and/or the Exception to Merit Promotion lists, determining the candidates which she considered best qualified for selection at FCI-Bennettsville.  (*Id.* at Smittie_000290).  At the time she made her selections, Drew had no knowledge of plaintiff's age, sex or any EEO activity.  (*Id.*).  On September 2, 2009, Director Holt selected Leroy Jones for the position.

Plaintiff states that he began his career as a correctional officer in Arkansas in 1979, where he received regular promotions.  He later worked as a correctional officer in Iowa, and began working as a federal correctional officer in 1986.  It is uncontested that he has extensive experience as a correctional officer.

A.   **Age Discrimination**

In Count Two, plaintiff alleges that he was subjected to both discrimination and retaliation in violation of the ADEA.   To establish a *prima facie* case of discrimination under the ADEA, plaintiff must meet the four criteria under *Chapman* set out above.  With regard to those criteria, it is undisputed that he is a member of the protected age group, was qualified for the position and was replaced by a younger

individual.  However, he also must establish that he was subjected to an adverse employment action.  *Chapman*, 229 F.3d at 1024.

Plaintiff alleges that he does not have to prove that an adverse action exists.  However, the ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  If there is no adverse employment action, the employer has not discriminated with respect to the plaintiff's "compensation, terms, conditions, or privileges of employment."  Therefore, it is necessary for him to make such a showing.

The problem faced by plaintiff with respect to the charge of discrimination under the ADEA is that he was not subject to an adverse employment action because the jobs he sought were applications for lateral transfers, not promotions.  An adverse employment action to make out a *prima facie* case of discrimination requires a "significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 2268-69, 141 L.Ed.2d 633 (1998).  *See also Rainey v. Holder*, 412 Fed.Appx. 235, 238 (11th Cir. 2011) (to qualify as an adverse employment action, the employment action in question must have created a "serious and material change in

the terms, conditions, or privileges of employment"). There has been no evidence submitted by plaintiff that he suffered from any of these things. In fact, the Eleventh Circuit has determined that a reasonable person would not consider a lateral transfer that did not result in "lesser pay, responsibilities, or prestige" to be adverse. *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448-49 (11th Cir. 1998). Similarly, the court concludes that a reasonable person would not consider the failure to obtain a lateral transfer that did not carry any greater responsibilities, pay, prestige or benefits to be an adverse employment action. Therefore, plaintiff has failed to establish a *prima facie* case of discrimination under the ADEA.

However, even assuming that plaintiff has established a *prima facie* case of discrimination under the ADEA, he has failed to rebut defendant's legitimate, non-discriminatory reason for not giving him this position.

Once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to establish a non-discriminatory reason for its actions. In this case, Warden Drew testified that she reviewed all of the candidates, including plaintiff, and selected the two whom she believed to be the best qualified for the position to be sent to Director Holt. The reason stated by Drew for recommending Herron and Jones is a legitimate, non-discriminatory reason. Thus, the burden shifts to plaintiff to establish that the stated reason is a pretext for discrimination.

Plaintiff asserts that he was much better qualified than those selected. However, he made this claim generally and failed to point out what qualifications he had that would have made him a better candidate than those selected. It is clear that plaintiff has a great deal of education and training in the area of paralegal studies and criminal justice, and as a corrections officer. However, the position description for this job specifically stated that "[t]here is no substitution of education for specialized experience for this position." Thus, specialized experience was the most important criterium. (DX 28, Job Description, at R. 409). The selectees were also well-qualified and had attributes that Drew believed made them more qualified for the position that was open.

According to the Eleventh Circuit, "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted." *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (internal quotation marks omitted); *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). Instead, "a plaintiff must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Springer*, 509 F.3d at 1349 (internal quotation marks omitted); *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004) (citation

omitted).  Both of the selectees were well-qualified for the position at Bennettsville.

While their education and experience may not have been as extensive as plaintiff's

overall, the selectees had certain attributes that Drew considered important and she

testified that this is why she chose them.  A plaintiff is not allowed to recast an

employer's proffered non-discriminatory reasons or substitute his business judgment

for that of the employer.  Provided that the proffered reason is one that might

motivate a reasonable employer, an employee must meet that reason head on and

rebut it, and the employee cannot succeed by simply quarreling with the wisdom of

that reason.  *See Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1341 (11th Cir.

2000).  Here, plaintiff has not shown that the disparities in the qualifications of the

selectees and his qualifications were "of such weight and significance that no

reasonable person, in the exercise of impartial judgment, could have chosen the

candidate selected over the plaintiff," *Springer, supra*, and the proffered reason

clearly meets the test of being one that might motivate a reasonable employer.

Furthermore, the evidence is not refuted that Drew had no knowledge of any

prior EEO activity by plaintiff at the time she made her selections.  Since plaintiff's

name was never submitted to Director Holt, his knowledge of any such activity by

plaintiff is irrelevant.  As a result, plaintiff has failed to establish a genuine dispute

of material fact that the reasons were pretext for discrimination against him.  *See

Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1309 (11th Cir. 2007) ("[Plaintiff]

erroneously argues that evidence of a discriminatory animus allows a plaintiff to establish pretext without rebutting each of the proffered reasons of the employer."); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993) (pretext means "both that the reason was false, and that discrimination was the real reason"). Consequently, plaintiff's claim of age discrimination is due to be dismissed for this reason as well.

### B.   <u>Retaliation</u>

As noted above, to establish a *prima facie* case of retaliation under the ADEA or Title VII, "the plaintiff must show (1) that [he] engaged in statutorily protected expression; (2) that [he] suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal citations omitted). With regard to retaliation under the ADEA, the plaintiff must show that the protected conduct related to alleged violations of the ADEA. Protected conduct comes in two forms: opposition and participation. *See* 29 U.S.C. § 623(d). Plaintiff alleges his conduct was related to opposition to violations of the ADEA and race discrimination.

Plaintiff states that he began filing for promotions and transfers in 2001. In 2005, he started filing complaints with the EEOC because he was being rejected for these positions. His most recent complaints with the EEOC were filed in August, September and December of 2009, twice in April 2010, and once in June 2010 and

March 2011. His complaints were that he was being rejected and less qualified applicants, mostly white and under the age of 45, were being selected. (DX 2, Plaintiff's Interrogatories, at ¶ 2). To establish a *prima facie* case of retaliation, plaintiff must demonstrate that he engaged in statutorily protected expression. Defendant does not assert that plaintiff has failed to establish this element with regard to either Title VII retaliation or ADEA retaliation. Therefore, the Court assumes that this element of the *prima facie* case is met with regard to Counts One and Two.

Plaintiff also must demonstrate that he was subjected to an adverse action. Plaintiff asserts that the failure to select him for this lateral transfer was an act of retaliation prohibited by Title VII of the Civil Rights Act, as set out in Count One, and under the ADEA, as set out in Count Two. For purposes of establishing a *prima facie* case of retaliation, a plaintiff does not have to show that he was subject to an adverse employment action in the sense that it affects his job, pay benefits or chances of future advancement. It is enough if "a reasonable employee would have found the challenged action materially adverse, which in . . . context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) (citation and quotation omitted). It is reasonable for an employee to be dissuaded from complaining about age discrimination if he or she believes that making a complaint may prevent him or her

from obtaining consideration for future promotions or transfers. Therefore, this element has been met.

Plaintiff also must demonstrate that the adverse action is related to the protected action taken by him. Defendant alleges that plaintiff has failed to make out a *prima facie* case of retaliation because the only evidence that he has of retaliation is that he was denied this promotion (and others) in close temporal proximity to his non-selection for this position. The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. *See Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798-99 (11th Cir. 2000). But mere temporal proximity, without more, must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (internal citations omitted). Defendant takes the unique position that plaintiff's evidence of temporal proximity is diminished due to the fact that such exists because plaintiff continuously filed claims on a nearly monthly basis throughout a four-year period. In other words, temporal proximity should be ignored because plaintiff complained a lot. However, the case cited by defendant does not support this proposition. *See Byrne v. Ala. Alcoholic Beverage Control Bd.*, 635 F.Supp.2d 1281, 1299 (M.D.Ala. 2009) (one alleged act of retaliation occurring sometime between November 2005 and July 2007 was too speculative to establish timely causal connection, and another disciplinary action contemplated before

plaintiff filed grievance but served afterward was not sufficient in temporal proximity to show causation).  If anything, the fact that the plaintiff was a "squeaky wheel" would seem to make him a more likely candidate for retaliation than an employee who had made only one or two prior claims of discrimination.  Thus, the court finds that plaintiff has provided sufficient evidence of temporal proximity to establish a *prima facie* case of retaliation under the ADEA.

However, as with the claim of the age discrimination claim in Count Two, defendant has established a legitimate, non-discriminatory reason for its actions with regard to the retaliation claims found in Counts One and Two.  That is, Warden Drew made the selection for this position and forwarded it to Assistant Director Perdue. She was unaware of any EEOC activity by plaintiff.  Because Smittie's name was never presented to Director Holt, he cannot have failed to select him based on a retaliatory animus.  For this reason, the plaintiff has failed to rebut the legitimate, non-discriminatory reason set out by defendant to justify plaintiff's non-selection to this position.  Therefore, plaintiff's claims of retaliation in Counts One and Two are also due to be dismissed.

## II. Counts Three and Four – FCI Yazoo City – 2009; Counts Five and Six – FCI Yazoo City – 2010

To the extent that plaintiff alleges age discrimination in violation of the ADEA in Counts Four and Six, those claims are due to be dismissed for the same reasons outlined above with regard to his age discrimination claim in Count Two.  That is,

because plaintiff was denied a lateral transfer with no change in pay, benefits or other tangible rewards, there is no evidence of an adverse employment action sufficient to make out a *prima facie* case of discrimination.  This leaves his Title VII retaliation claims in Counts Three and Five and his ADEA retaliation claims in Counts Four and Six.

As previously noted, in order to establish a *prima facie* case of retaliation, plaintiff must demonstrate that he engaged in statutorily protected expression. Defendant does not assert that plaintiff has failed to establish this element with regard to either Title VII retaliation or ADEA retaliation.  Therefore, the Court assumes that this element of the *prima facie* case is met with regard to these counts.

As noted above, it is reasonable for an employee to be dissuaded from complaining about age discrimination if he or she believes that making a complaint may prevent him or her from obtaining consideration for future promotions or transfers.  Therefore, plaintiff has established the second element of his *prima facie* case.  Likewise, plaintiff's failure to receive these positions was temporally proximate to his complaints to the EEOC about his non-selection in favor of younger, mostly white applicants, satisfying the third element needed to establish a *prima facie* case of retaliation.

However, defendant further asserts that this element has not been met because plaintiff was never recommended to Holt for selection to the two positions available

in the 2010 Yazoo City posting.  Therefore, any discriminatory animus Holt held against plaintiff for filing numerous EEOC complaints could not have been a factor in his non-selection for these positions.

Plaintiff applied for a GS-11 transfer to FCI Yazoo City in 2009 and 2010.  The warden at this facility was Bruce Anthony Pearson.  Plaintiff was not selected for any of the positions that were available at this institution.  The selectees were Omar Doucher and Kyle Goins in 2009 and Willie Samuel and Sondra Miller in 2010.  (DX 5, Holt Interrogatories, at Smittie_000214-00015).   Director Holt testified that plaintiff was not selected for these (and several other) positions because he was not recommended by the warden.  (*Id.* at Smittie_000216).

However, according to Yazoo City Warden Bruce Pearson, all of the candidates for these positions were forwarded to Perdue as being those best qualified for merit promotion or exception to merit promotion.  Before doing so, Pearson would have each candidate's references checked and sometimes get a third reference.  He then would rank them for consideration by the selecting official.  (DX 8, Pearson Interrogatories, at Smittie_000284).  According to Pearson, he gave consideration to all the best qualified candidates, including plaintiff.  (*Id.*).  Asked in an interrogatory to state his rationale for not selecting plaintiff, Pearson responded stating only that he would reference the candidates and rank them all for selection.  (*Id.*).  However, in an affidavit submitted by plaintiff, Pearson states that in both the 2009 and 2010

selections, plaintiff was an applicant for each position and Pearson recommended him for promotion to Deputy Regional Director William Perdue.  (Doc. 21-1, Aff. of Bruce Pearson).

Defendant argues that the affidavit of Warden Pearson offers no specific evidence that plaintiff was recommended for the selections at issue here, noting that there were a total of eight Lieutenant postings for which plaintiff was not selected in 2009 and 2010.  In particular, defendant asserts that there is no clear evidence that plaintiff was recommended for the two postings at FCI Yazoo City (for four positions) that are the subject of Counts Three through Six.  Although there were several Lieutenant positions for which plaintiff applied in 2009 and 2010, it is unclear from the records provided how many of them were for positions at FCI Yazoo City. It is clear that there were at least two postings and that plaintiff was not selected for the positions available under either one.  Furthermore, the evidence reflects that plaintiff was, in fact, a candidate for these four positions.

Regarding the two positions for the posting at FCI Yazoo City that are referenced in Counts Three and Four, Defendant's Exhibit 12 reflects three different lists of qualified applicants, all generated on October 15, 2009.  The first list contains the names of candidates who were found "best qualified" for the Yazoo City positions.  It contains the names of Kyle Goins, Luverta Howell and Leroy Jones. (DX 12 at Smittie_000747).  The second list contains the name of one candidate

"eligible for noncompetitive consideration as 30% or more disabled veteran" ("30% Disabled Veteran" list).   It contains the name of Omar Docher.   (*Id.* at Smittie_000748).  The third list contains the names of applicants for the Yazoo City positions who are "eligible for noncompetitive consideration and is/are exception(s) to the Merit Promotion procedures" ("Exceptions" list).  This list contains the name of plaintiff, Ishmael Smittie, and three other candidates.

Although all three lists were generated on the same day, October 15, 2009, Omar Docher was selected for one of the Yazoo City positions on November 17, 2009 (*id.* at Smittie_000748), and Goins was selected for the other position on December 27, 2009 (*id.* at Smittie_000747).  Nonetheless, considering the testimony of Warden Pearson, the three lists appear to contain the names of all the qualified candidates for these positions, divided into categories corresponding to the manner in which they obtained their qualification.  All were created on the same date.  Based on this, it appears that Smittie was among the candidates for the two FCI Yazoo City positions that are the subject of Counts Three and Four and that he was rejected for the position.[1]

As defendant correctly points out, plaintiff was not the sole recommended candidate for these positions.  As noted above, Warden Pearson sent in several names

---

[1]  All three documents also bear a time stamp of December 29, 2009, at 2:43 p.m. reflecting that they were kept together and transmitted as one overall list after the completion of the selection process for both positions.

as possible selectees for these positions.  However, according to Pearson, he did not send in only the top two candidates; he "gave consideration to all of the candidates on either of the best qualified list as well as the exception list that included Mr. Smittie." (DX 8, Pearson Interrogatories, at Smittie_000284).  According to Pearson, he would "reference the candidates and rank them all for consideration selection." (*Id.*).  However, there is no indication on the lists provided where plaintiff was ranked because all of the selection lists put the candidates in alphabetical order, rather than according to how they were ranked by the wardens in their recommendations. Nonetheless, Pearson testified that he recommended Smittie for a position at Yazoo City in 2009 and in 2010.  (Doc. 21-1, Aff. of Bruce Pearson).

This is inconsistent with Director Holt's testimony that the wardens select the top two candidates for each position and send their names to the Deputy Regional Director (Perdue).  (DX 5, Holt Interrogatories, at Smittie_000215).  Thus, while defendant opines that plaintiff could have been recommended for the Yazoo City positions, along with others, but not selected by the Director, Director Holt testified that plaintiff was not selected because he was not recommended by a warden.  (*Id.* at Smittie_000216).  Based on what can be gleaned from the evidence presented, this is simply incorrect with regard to the recommendations made by Warden Pearson for the Yazoo City positions that are the subject of Counts Three and Four.

In addition, Deputy Director Perdue was questioned regarding whether any of the positions involved in this case were positions for which the selectee was not the candidate recommended by the Warden.   Perdue responded that he could not remember anything about any of the candidates, with the exception of two.  He recalls the selection of Omar Docher in 2009 and Willie Samuel in 2010, both at FCI Yazoo City.  He remembers these two because he was previously Associate Warden at Yazoo City.  With the exception of these two candidates, Perdue testified that, although it was rare for Holt not to select a recommended candidate, it did occur, and he did not know whether Director Holt, in fact, selected the person the warden at each institution had recommended for the remaining positions.  This means that Perdue could not state whether either of the other Yazoo City positions were ones wherein the Director selected someone other than the person recommended by the warden. (Perdue Depo. at 24-28).

Thus, according to Perdue, Holt selected Docher for one of the 2009 Yazoo City positions and was the one recommended by the Yazoo City warden.  Docher was not on the "best qualified" list.  Rather, he was on the "30% disabled veteran" list. With regard to the other candidate selected, as noted above, Perdue cannot state whether he (Goins) was the one recommended by the Yazoo City warden for the other position available in this posting, or whether Holt selected someone other than the

recommended candidate.  On the other hand, Pearson specifically states that he recommended Smittie for a position at Yazoo City in 2009.

The same situation repeats itself with regard to the selection of two candidates for the 2010 FCI Yazoo City positions set out in Counts Five and Six.  Two lists of eligible, qualified candidates, both generated on February 25, 2010, were submitted for selection.  The first contained four names described as the "best qualified" candidates. (DX 15 at Smittie_000814).  The second list contained the names of five candidates who were qualified "for noncompetitive consideration and is/are exceptions(s) to the Merit Promotion procedures" (the "exceptions" list).  This list contains five names of candidates, including Ishmael Smittie.   (DX 15 at Smittie_000815).  The candidates selected were Sondra Miller and Willie Samuel. This time, on March 8, 2010, both were selected from the "best qualified" list.  No selections were made from the "exceptions" list on this occasion.

According to Deputy Director Perdue, Holt selected Samuel and he recalls that he was recommended by the warden of FCI Yazoo City.  However, he does not state that he recalls whether Miller was the one recommended for the other Yazoo City position or whether Holt selected someone other than the recommended candidate. (Perdue Depo. at 25-26).  On the other hand, Warden Pearson specifically states that he recommended Smittie for a position at Yazoo City in 2010.

Therefore, plaintiff has established a *prima facie* case of retaliation under both Title VII and the ADEA.  Unlike the situation in Counts One and Two, where plaintiff's name was not even submitted to Holt, there is evidence which reflects that Smittie's name was submitted to Holt, that Holt was aware of Smittie's recent EEOC activity, and that Holt failed to select him.  Furthermore, there is evidence that defendant's stated legitimate, non-discriminatory reason for not selecting plaintiff is a pretext for discrimination given that Holt asserts that he did not select Smittie because he was not recommended by the warden at FCI Yazoo City, while the warden at that institution states that he did, in fact, recommend him for positions in both 2009 and 2010.  Therefore, the motion for summary judgment with regard to retaliation under Title VII as set out in Counts Three and Five and under the ADEA as set out in Counts Four and Six is due to be denied.

## III.   <u>Counts Seven and Eight – FCI Tallahassee</u>

For the same reasons cited above with regard to Counts Two, Four and Six, plaintiff's claim of age discrimination is due to be dismissed for failure to establish a *prima facie* case.  That is, plaintiff has failed to demonstrate that he suffered an adverse employment action when he was denied a lateral transfer that provided no increase in pay, benefits or opportunity for future advancement.  This leaves plaintiff's claims of retaliation under Title VII and under the ADEA.

In 2009, plaintiff applied for a position as a GS-11 Lieutenant at FCI Tallahassee. The recommending warden for this position was Warden William Taylor. Three candidates were selected for this posting. There were two lists of qualified applicants, "best qualified" and "exceptions." Smittie was among the candidates listed on the "exceptions" list. Warden Taylor, an African-American male, made the recommendations. Taylor gave consideration to Smittie for these positions, but did not recommend him for selection because he "was not in my top three to the Region, based on reference checks, experience, education, awards, training, etc." (DX 19, Taylor Interrogatories, at Smittie_000307). The three candidates selected, Velvette Jones, Kenneth Johnson and Ronald Mason, were all from the "exceptions" list. Jones and Johnson are African-American and Mason, a Caucasian, is older than plaintiff. (DX 20). Warden Taylor testified that he never considered race, age, sex or prior EEO activity in making a recommendation. (DX 19, Taylor Interrogatories, at Smittie_000308).

Because Director Holt appointed the candidates recommended by Warden Taylor, plaintiff cannot establish a *prima facie* case of discrimination. The causal connection element needed to establish a *prima facie* case of retaliation is satisfied if a plaintiff shows that the protected activity and adverse action were "not wholly unrelated." *Brungart*, 231 F.3d at 799. In this instance, the only evidence that the EEO activity by plaintiff is causally related to his non-selection is the alleged

temporal proximity of his non-selection by Holt to his protected activity. However, in this instance, it is not enough. Plaintiff's name was not submitted to Director Holt, so there is clear evidence that rebuts the evidence of temporal proximity. This evidence is further rebutted by the fact that two of the three selectees are African-American, both of whom had prior EEO activity themselves, and the remaining selectee is older than plaintiff.

Furthermore, Warden Taylor provided a legitimate, non-discriminatory reason for not submitting plaintiff's name to Director Holt. Plaintiff was not in his top three candidates based on "reference checks, experience, education, awards, training, etc." While plaintiff asserts that he is vastly better qualified than those selected, a review of the evidence reflects that each person selected was qualified for the position. Furthermore, education and experience were not the only factors considered and, as noted above, the fact that plaintiff considers himself to be a much better candidate is largely irrelevant. In addition, many of the details of the qualifications he now claims to have were not contained in the applications he submitted for the positions. The differences in qualifications as submitted are not so vast as to support an inference that this reason is a pretext for discrimination.

Because plaintiff cannot establish a causal connection between his protected activity and his non-selection for these activities and has not rebutted the legitimate,

non-discriminatory explanation given for his non-selection, plaintiff's retaliation claims set out in Counts Seven and Eight are due to be dismissed.

## IV.   <u>Counts Nine and Ten – FCI Marianna</u>

For the same reasons cited above with regard to Counts Two, Four, Six and Eight, plaintiff's claim of age discrimination in Count Ten is due to be dismissed for failure to establish a *prima facie* case.  That is, plaintiff has failed to demonstrate that he suffered an adverse employment action when he was denied a lateral transfer that provided no increase in pay, benefits or opportunity for future advancement.  This leaves plaintiff's claims of retaliation under Title VII and under the ADEA.

In 2010, plaintiff applied for a position as a GS-11 Lieutenant at FCI Marianna. The recommending warden for the position was Paige Augustine.  Plaintiff was one of 24 candidates eligible for this position.  Warden Augustine testified that she considered plaintiff for the position, but recommended Christopher Barfield as the best candidate for the position.  Augustine testified that she does not know Smittie. (DX 6, Augustine Interrogatories, at Smittie_000303).  Subsequently, Director Holt accepted Warden Augustine's recommendation and confirmed Barfield as the selectee.

In this instance, the only evidence of a causal connection is again temporal proximity.  However, the evidence is unrefuted that Warden Augustine did not know

Smittie at the time she recommended Barfield and, therefore, could not have been influenced by his prior EEO activity.

Likewise, she has provided a legitimate, non-discriminatory reason for not selecting plaintiff. She had other qualified candidates and chose someone else whom she believed was the best candidate. (DX 6, Augustine Interrogatories, at Smittie_000303; DX 32, Selection Memorandum). A review of the qualifications reflects that the differences in qualifications as submitted are not so vast as to suggest that this reason is a pretext for discrimination.

Because plaintiff cannot establish a causal connection between his protected activity and his non-selection for these activities and has not rebutted the legitimate, non-discriminatory explanation given for his non-selection, plaintiff's retaliation claims set out in Counts Nine and Ten are due to be dismissed.

## V.   Counts Eleven and Twelve – FCI Miami

For the same reasons cited above with regard to Counts Two, Four, Six, Eight and Ten, plaintiff's claim of age discrimination in Count Twelve is due to be dismissed for failure to establish a *prima facie* case. That is, plaintiff has failed to demonstrate that he suffered an adverse employment action when he was denied a lateral transfer that provided no increase in pay, benefits or opportunity for future advancement. This leaves plaintiff's claims of retaliation under Title VII and under the ADEA.

In 2010, plaintiff applied for a position as a GS-11 Lieutenant at FCI Miami. The recommending warden for this position was Warden Kenny Atkinson. Plaintiff's name was one of 23 eligible candidates for this position. Warden Atkinson testified that he considered Smittie for this position but ultimately selected another candidate, Bobby Roy, a Caucasian male. According to Atkinson, he selected Roy because he believed he was highly qualified and because he had worked at several institutions and had a strong background in the area of investigations. (DX 9, Atkinson Interrogatories, at Smittie_000299). Warden Atkinson stated that he chose Roy over Smittie because he believed Roy was the best choice based on his experience serving as a Supervisory Investigative Supervisor, his reputation as a good Lieutenant, and his documented work experience and accomplishments. (*Id.*). Atkinson stated that neither race, age, sex nor prior filing of EEO complaints were considered during his review of the applicants. (*Id.* at Smittie_000299-300). Subsequently, Warden Atkinson's recommendation of Roy was confirmed by Director Holt.

Because Director Holt appointed the candidate recommended by Warden Atkinson, plaintiff cannot establish a *prima facie* case of retaliation. The causal connection element needed to establish a *prima facie* case of retaliation is satisfied if a plaintiff shows that the protected activity and adverse action were "not wholly unrelated." *Brungart*, 231 F.3d at 799. In this instance, the only evidence that the EEO activity by plaintiff is causally related to his non-selection is the temporal

proximity of the non-selection to his protected activity. However, it is not enough. Plaintiff's name was not submitted to Director Holt, so there is clear evidence that rebuts the evidence of temporal proximity.

Likewise, there is a legitimate, non-discriminatory reason why plaintiff was not chosen. Warden Atkinson testified that he chose Roy because he believed he was best qualified and because of his experience as a Supervisory Investigative Supervisor. A review of Roy's qualifications reflects that the differences in qualifications as submitted are not so vast as to allow an inference that this reason is a pretext for discrimination.

Because plaintiff cannot establish a causal connection between his protected activity and his non-selection for these activities and has not rebutted the legitimate, non-discriminatory explanation given for his non-selection, plaintiff's retaliation claims set out in Counts Eleven and Twelve are due to be dismissed.

## CONCLUSION

Based on the foregoing, it is ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment is due to be and hereby is GRANTED as to Counts One, Two, Seven, Eight, Nine, Ten, Eleven and Twelve, and such Counts hereby are DISMISSED WITH PREJUDICE. It is further ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment is due to be and hereby is GRANTED as to plaintiff's claims of age discrimination in Counts Four and

Six, and such claims hereby are DISMISSED WITH PREJUDICE.  It is further ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment is due to be and hereby is DENIED as to Counts Three and Five and plaintiff's claims for retaliation under the ADEA in Counts Four and Six, due to the existence of genuine issues of material fact regarding whether the reasons proffered for plaintiff's non-selection for positions at FCI Yazoo City were a pretext for retaliation under Title VII and the ADEA.

DONE this 6th day of November, 2015.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE